**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| DARLA STEWART, : | |
| : | |
| Plaintiff, : | |
| : | Case No. 2:06-CV-0736 |
| v. : | **JUDGE ALGENON L. MARBLEY** |
| : | **Magistrate Judge Norah McCann King** |
| CHEEK & ZEEHANDELAR, LLP, *et al.* : | |
| : | |
| Defendants. : | |
| GEORGE C. LEXINGTON, : | |
| : | |
| Plaintiff, : | |
| : | Case No. 2:07-CV-153 |
| v. : | **JUDGE ALGENON L. MARBLEY** |
| : | **Magistrate Judge Norah McCann King** |
| CHEEK & ZEEHANDELAR, LLP, *et al.* : | |
| : | |
| Defendants. : | |

**OPINION AND ORDER**

**I.  INTRODUCTION**

Plaintiffs Darla Stewart and George Lexington filed this class-action lawsuit against Defendants Cheek & Zeehandelar, LLP, a law firm; Emerson Cheek, a principal at the firm; and Krishna Velayudhan, an attorney associated with the firm (collectively, "Cheek & Zeehandelar").  Plaintiffs claim that Cheek & Zeehandelar has engaged in misleading and deceptive business practices in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), and Ohio's Consumer Sales Practices Act, Ohio Revised Code ("O.R.C.") § 1345.01 ("CSPA").  In particular, Plaintiffs allege that Cheek & Zeehandelar seeks to garnish or attach the property of Ohio consumers who have defaulted on credit and loan

agreements, without having first investigated the nature of the debtors' property to determine if it is legally exempt from garnishment or attachment.

Plaintiffs now move to certify a declaratory and injunctive-relief class pursuant to Federal Rule of Civil Procedure 23(b)(2) and a money damages sub-class pursuant to Rule 23(b)(3). For the reasons set forth below, the Court modifies Plaintiffs' proposed (b)(2) class and **GRANTS** Plaintiffs' motion to certify this class, but **DENIES** Plaintiffs' motion to certify its proposed (b)(3) sub-class.

## II. BACKGROUND

### A. Plaintiffs' Allegations

Cheek & Zeehandelar is a Columbus, Ohio based law firm that primarily litigates collection actions, meaning that it works to collect on consumers' unpaid debts. Cheek & Zeehandelar does this in part by petitioning the courts to issue writs of attachment over the bank accounts of consumers who have allegedly defaulted on consumer payment obligations owed to Cheek & Zeehandelar's clients. Plaintiffs allege that through the use of standardized and uniform policies and practices, Cheek & Zeehandelar seeks writs of attachment by representing to Ohio courts that it has "good reason to believe and does believe [that the debtor's bank account] has property other than [the debtor's] personal earnings." In fact, plead Plaintiffs, Cheek & Zeehandelar makes these representations without regard to their truth or falsity because, pursuant to its standard business practices, Cheek & Zeehandelar routinely fails to investigate the nature of the property it seeks to attach.

Under Ohio law, a judgment creditor may institute a proceeding for garnishment of property by filing an affidavit identifying the judgment debtor and stating that the affiant "has a

reasonable basis to believe that the person named in the affidavit as the garnishee may have property, other than personal earnings, of the judgment debtor that is not exempt under" either Ohio or federal law.[1] Funds exempt from attachment under Ohio law include, among others, a significant portion of wage earnings, workers' compensation benefits, unemployment compensation benefits, disability benefits, pension plans and retirement accounts, and spousal and child support. O.R.C. § 2329.66. Funds exempt under federal law include social-security and veterans' benefits, among others. *See e.g.,* 42 U.S.C. § 407 (exempting social-security benefits); 15 U.S.C. § 1673 (governing exemptions from garnishment on personal earnings); 38 U.S.C. § 5301 (exempting veterans' benefits).

## B. The Defendants

Defendant Cheek oversees his firm's consumer collections department. Defendant Velayudhan is one of the attorneys in this department who, along with Cheek, regularly executes affidavits to attach the property of purported debtors, and in doing so, affirms that he has a reasonable basis to believe that the property is not exempt from attachment. The consumer-collections department primarily collects on credit-card debts and defaulted promissory notes. It has filed cases in all of Ohio's eighty-eight counties.

Velayudhan testified that the firm had a standard protocol in place for processing the garnishment affidavits he signed. Administrative staff at Cheek & Zeehandelar prepared the

---

[1] The statute was recently amended by the Ohio Legislature and the new version, which will become effective on September 30, 2008, dispenses with the "reasonable basis" requirement. Thus, judgment creditors will no longer have to aver that they have "a reasonable basis to believe" that the judgment debtor's property is not exempt under Ohio and federal law. Under the new law, judgment creditors will need only identify the judgment debtor, provide a description of the property, and identify the garnishee who may have or control the property of the judgment debtor.

3

affidavits for his review and signature. Velayudhan reviewed the files of each debtor with an eye towards spotting any red flags suggesting that filing the affidavit would be improper. These red flags included such things as whether the debtor was deceased, had filed for bankruptcy, or had funds exempt from attachment under Ohio or federal law. To identify exempt property or funds, Velayudhan looked through the file for evidence that the debtor was employed, owned property, or contacted the firm to explain that the property or funds were exempt. Velayudhan testified that he never personally contacted the debtors to determine whether their property or funds were exempt, nor did he contact the debtors' banks, or conduct debtors' examinations. Velayudhan further testified that the firm did not send any written discovery to debtors to ascertain the status of their property or funds, but that it began doing so sometime within the year prior to his January 2008 deposition, after Plaintiffs had initiated this suit. Finally, Velayudhan testified that he reviewed and signed thirty to forty garnishment affidavits each business day.

### C. The Plaintiffs

Plaintiff Stewart is a kindergarten teaching assistant. Cheek & Zeehandelar initiated a collection action against her in Ohio state court. Although the court had served Stewart with notice of the suit, she did not realize its importance, and set the notice aside. Cheek & Zeehandelar obtained a default judgment against her on May 10, 2006.

On May 16, 2006, Velayudhan signed an affidavit affirming that he had "good reason to believe and d[id] believe that [Century National Bank] may have property other than personal earnings of [Darla J. Stewart] that is not exempt under the laws of the State of Ohio or the United States." In reliance on Velayudhan's affidavit, the state court issued a writ of attachment for Stewart's checking and savings accounts on May 23, 2006. Stewart and her husband learned

what had happened when they were prevented from withdrawing money from their checking account.  Stewart responded by hiring an attorney to contest the attachment of her accounts.  On June 9, 2006, the state court issued an order finding that $555.15 of the $681.30 in her checking account constituted exempt personal earnings that had to be restored to her.

Plaintiff George Lexington served in the United States military, from which he was honorably discharged.  Beginning in 2002 or 2003, he began receiving disability benefits from the Department of Veterans' Affairs.  When Cheek & Zeehandelar contacted him about paying off his defaulted debt, Lexington told the firm that his only source of income was his VA benefits.  Nonetheless, Lexington agreed to pay what he could, $50 a month, to extinguish the debt.  This arrangement continued for some period of time.  Lexington testified at his deposition that if he was short a month, he would notify Cheek & Zeehandelar of this and then work to make up the shortage in subsequent payments.  Ultimately, though, after Lexington missed two payments, Velayudhan filed an affidavit on May 24, 2006, affirming that he had "good reason to believe and d[id] believe that the Andover Bank [] may have property other than personal earnings of the Judgment Debtor that is not exempt under the laws of the State of Ohio or the United States."  The state court issued the attachment order and Lexington's bank account was swept.  He thereafter enlisted the assistance of Legal Aid and on July 11, 2006, the state court issued an order finding that the funds in the attached bank account were Lexington's VA benefits and were therefore exempt from attachment.  The court ordered the funds returned to Lexington and his bank account released.

Plaintiffs now move for class certification.

## III. ANALYSIS

### A. Legal Standards

Federal Rule of Civil Procedure 23 governs class actions. A plaintiff seeking class certification bears the burden of establishing compliance with all four requirements of Rule 23(a), referred to by the shorthand of "(1) numerosity, (2) commonality, (3) typicality, and (4) adequacy." Fed. R. Civ. P. 23(a); *Alkire v. Irving*, 330 F.3d 802, 820 (6th Cir. 2003). In addition, the plaintiff must satisfy one of the three sub-sections of Rule 23(b). *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). In ruling on a motion for class certification, a district court is prohibited from considering the merits of the plaintiffs' claims, but the court may consider evidence outside of the pleadings to determine whether the prerequisites of Rule 23 are met. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974); *In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 105 (D.C. Cir. 2002).

### B. Certification of Plaintiffs' Proposed Class Under Rule 23(b)(2)

As described above, Plaintiffs seek certification of a proposed class under Rule 23(b)(2), and certification of a proposed sub-class under Rule 23(b)(3). The primary distinction between (b)(2) and (b)(3) classes is in the relief sought: Rule 23(b)(2) classes are confined to declaratory and injunctive relief actions (with certain limited exceptions discussed below), whereas Rule 23(b)(3) classes apply to damages actions. *Reeb v. Ohio Dep't of Rehab & Corr., Belmont Corr. Inst.*, 435 F.3d 639, 651 (6th Cir. 2006); *Wooden v. Bd. of Regents of the Univ. Sys. of Ga.*, 247 F.3d 1262, 1288 n.23 (11th Cir. 2001). The due process considerations in a (b)(3) damages action are higher than in a (b)(2) declaratory/injunctive relief action because "monetary relief . . . is less of a group remedy and instead depends more on the varying circumstances and merits of

each class member's case." *Karnette v. Wolpoff & Abramson*, No. 06-44, 2007 U.S. Dist. LEXIS 20794, at *33 (E.D. Va. Mar. 23, 2007) (quoting *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 413 (5th Cir. 1998)). Consequently, courts are required to provide notice of a certified (b)(3) action to all class members and an opportunity for them to opt-out of the class (so that they will not be bound by any final judgment and can bring individual actions if they wish). Fed. R. Civ. P. 23(b)(3); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-812 (1985) (holding that the Due Process Clause requires notice of right to opt-out of suits for money damages).

In this section, the Court will consider the propriety of certifying Plaintiffs' proposed (b)(2) class. In section C below, the Court will turn to whether Plaintiffs' proposed (b)(3) sub-class should be certified.

### 1. Rule 23(a)

Under Rule 23(a), Plaintiffs must show that the proposed class is precisely defined and ascertainable. In addition, Plaintiffs must satisfy each of the Rule's four enumerated requirements.

*(a) Ascertainability*

Ascertainability goes to whether the class has been defined such that it encompasses an identifiable group. Although this requirement is not expressly spelled out in Rule 23(a), it has been implied by courts. *Kurihara v. Best Buy Co.*, No. 06-01884, 2007 U.S. Dist. LEXIS 64224, at *14-*15 (N.D. Cal. Aug. 29, 2007); *Bano v. Union Carbide Corp.*, No. 99-11329, 2005 U.S. Dist. LEXIS 32595, at *14 (S.D.N.Y. Aug. 12, 2005). To say that the class must be ascertainable does not mean that the party moving for class certification must specifically name each of the class's members. *Kurihara*, 2007 U.S. Dist. LEXIS 64224 at *15. Rather, the

touchstone of ascertainability is whether the class is objectively defined, so that it does not implicate the merits of the case or call for individualized assessments to determine class membership. *See, e.g., Napier v. Laurel County*, No. 06-368, 2008 U.S. Dist. LEXIS 14524, at *18-*19 (E.D. Ky. Feb. 26, 2008) ("[A] class should not be certified where extensive factual inquiries are required to determine whether individuals are members of a proposed class."); *In re Chiang*, 385 F.3d 256, 272 (3d Cir. 2004) (commenting that classes defined in terms of subjective criteria, such as the class members' state of mind, are not ascertainable, and re-drawing the class definition so that it was not contingent upon class members' "belief" that they were discriminated against). Because the point of (b)(2) classes is to furnish broad injunctive or declaratory relief, and because notice is not required, courts apply the ascertainability requirement more flexibly in this context, than in the (b)(3) context. *Finch v. N.Y. State Office of Children & Family Servs.*, No. 04-1688, 2008 U.S. Dist. LEXIS 61533, at *17 (S.D.N.Y. Aug. 8, 2008) ("A Rule 23(b)(2) class need not be defined as precisely as a Rule 23(b)(3) class . . . ."); *Bratcher v. Nat'l Standard Life Ins. Co. (In re Monumental Life Ins. Co.)*, 365 F.3d 408, 413 (5th Cir. 2004). Thus, "in certifying Rule 23(b)(2) classes, [courts] generally approve definitions that focus on the alleged conduct at issue rather than the ease of identifying the class members prior to determinations of liability." *Hohider v. UPS*, 243 F.R.D. 147, 210 (W.D. Pa. 2007).

Here, Plaintiffs' proposed class is defined as

> all consumers who have been subject to an order of garnishment or attachment of exempt property or funds, whether temporary or permanent, based on an affidavit signed by any principal, partner, or employee of defendant Cheek & Zeehandelar, at any time on or after August 24, 2004.

The problem with this definition is that membership in the class cannot be determined except through individualized factual inquiries. The Court would have to resolve whether the property or funds of each putative class member was actually exempt from garnishment or attachment just to determine whether that person is included within the class. To do so, the Court would have to come up with a mechanism for contacting all persons who had been subject to an order of garnishment or attachment as a result of a garnishment affidavit filed by Cheek & Zeehandelar, afford them an opportunity to submit relevant documents establishing that their property or funds were exempt at the time the affidavit was filed, and then carefully review all this information and make case-by-case determinations regarding who is a member of the class. For these reasons, Plaintiffs' proposed class definition is unworkable.

Since courts are less exacting about enforcing the ascertainability requirement with respect to (b)(2) classes, the Court could perhaps overlook the flaw in Plaintiffs' class definition. The better practice, however, is for the Court simply to exercise its discretion to modify the class definition to eliminate any reference to "exempt property or funds." *See, e.g., Powers*, 501 F.3d at 618 (modifying the class definition to ensure that the defendant was held accountable only for its own alleged wrongdoing, and not that of others); *Hohider*, 243 F.R.D. at 209 ("If the court finds that the proposed definition is not sufficiently definite, it may modify the definition instead of dismissing the proposed action.") (quoting 5 James W. Moore *et al.*, Moore's Federal Practice § 23-21[7] at 23-62.2 (3d ed. 1999)). Now the definition will read:

> all consumers who have been subject to an order of garnishment or attachment, whether temporary or permanent, based on an affidavit signed by any principal, partner, or employee of defendant Cheek & Zeehandelar, at any time on or after August 24, 2004.

9

This revised class definition is precise, objective, and ascertainable based on records in Cheek & Zeehandelar's possession establishing against whom it procured orders of garnishment or attachment.

Besides ensuring that the Court will not be overwhelmed with individualized mini-hearings, modifying the class definition is appropriate for a second reason. Plaintiffs' central allegation is that Cheek & Zeehandelar has engaged in a common course of conduct of failing to perform an adequate investigation prior to attesting to courts that the property it seeks to attach is not exempt from such attachment under either Ohio or federal law. Since Plaintiffs seek to certify a (b)(2) class and enjoin Cheek & Zeehandelar from persisting in this faulty business practice, it makes sense to broaden the class to all those who have been subject to an order of garnishment or attachment at the instigation of Cheek & Zeehandelar, irrespective of whether the property sought to be attached is exempt or not. That is, because Plaintiffs' objective is to get Cheek & Zeehandelar to conduct an adequate investigation into the exempt or non-exempt status of debtors' property before filing garnishment affidavits, "it is proper and desirable to define [the] class . . . to encompass the entire class of persons affected," which here means all those who have been subject to an order of garnishment or attachment at the behest of Cheek & Zeehandelar. *Hohider*, 243 F.R.D. at 211 (citation omitted).

*(b) Numerosity*

Rule 23(a) says that the class must be "so numerous that joinder of all members is impracticable." There is "no strict numerical test" that Plaintiffs must meet to satisfy this requirement. *Thrope v. Ohio*, 173 F.R.D. 483, 487 (S.D. Ohio 1997). "However, as a practical matter, when class size reaches substantial proportions, the impracticability requirement is

usually satisfied by the numbers alone." *In re UnumProvident Corp. ERISA Benefits Denial Actions*, 245 F.R.D. 317, 323 (E.D. Tenn. 2007).

The Court has no trouble concluding that the numerosity requirement is satisfied here. Cheek & Zeehandelar's consumer-collection practice is statewide and Velayudhan testified that he signs between thirty and forty garnishment affidavits each business day. Moreover, Cheek & Zeehandelar has already produced to Plaintiffs 1,236 of these affidavits. This evidence is sufficient to satisfy the numerosity requirement.

*(c) Commonality*

The second criterion of Rule 23(a) requires that the case present issues of law or fact common to the class. "[T]here need only be one question common to the class, [but] that question must be a 'common issue the resolution of which will advance the litigation.'" *Alkire*, 330 F.3d at 820 (quoting *Sprague v. GMC*, 133 F.3d 388, 397 (6th Cir. 1998)). "Cases alleging a single course of wrongful conduct are particularly well-suited to class certification." *Powers*, 501 F.3d at 619.

The overridng common question presented by this case is whether Cheek & Zeehandelar breached its legal duties under the FDCPA and Ohio's CSPA by filing garnishment affidavits against class members without undertaking a proper investigation into the exempt or non-exempt status of class members' property. The resolution of that question will advance the litigation by either establishing or relieving Cheek & Zeehandelar of its alleged liability. The Court therefore finds that Plaintiffs satisfy Rule 23(a)(2)'s commonality requirement.

*(d) Typicality*

Under Rule 23(a)(3), "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "To satisfy the typicality requirement, the representative plaintiff's interests must be aligned with those of the class." *Powers*, 501 F.3d at 618. This means that the plaintiff's claim must "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members, and [be] based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007).

Here, Plaintiffs' claims are typical of those of the class as a whole because Plaintiffs allege that Cheek & Zeehandelar engaged in unlawful business practices by filing garnishment affidavits without adequately inquiring into the exempt or non-exempt nature of debtors' property or funds. Because "[t]his is the same allegation any other class member would bring against [Cheek & Zeehandelar], . . . resolution of [Cheek & Zeehandeler's] liability under [the FDCPA and the CSPA] with regards to [Plaintiffs'] claim will also resolve the [firm's] liability as to claims brought by other class members." *Beattie*, 511 F.3d at 561-62. Plaintiffs thus satisfy the typicality requirement.

*(e) Adequacy*

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625-26 (1997). Adequacy tests both whether class counsel has the qualifications and experience to effectively prosecute the case, and whether the named plaintiffs will vigorously represent the interests of the class. *Int'l Union, United Auto., Aerospace, & Agric. Implement*

*Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996).

Cheek & Zeehandelar does not dispute that Plaintiffs and their counsel have carried their burden with respect to the adequacy requirement, and with good reason.  The declaration of attorney Edward Icove shows that he has substantial experience litigating consumer class actions in both state and federal courts.  Attorney Amy Gullifer is also experienced in consumer class actions.  The Court further observes that to date Plaintiffs' counsel's work in this case has been excellent.  Plaintiffs have filed an amended complaint, which Cheek & Zeehandelar did not challenge through a motion to dismiss.  Plaintiffs have also successfully resisted Cheek & Zeehandelar's efforts to moot their claims through a Rule 68 offer of judgment and have filed a well-briefed motion for class certification.

Plaintiffs Stewart and Lexington have shown that they too will vigorously litigate the case to advance the interests of the class.  Both have submitted declarations affirming that they understand the responsibilities of a class representative and are willing and able to undertake these responsibilities.

For these reasons, the Court finds that the adequacy requirement is satisfied.

2.  Rule 23(b)

Certification under Rule 23(b)(2) is proper where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Rule 23(b)(2) class actions are reserved for those predominantly seeking declaratory and/or injunctive relief. *Karnette*, 2007 U.S. Dist. LEXIS 20794 at *32-*33; *Schwarm v. Craighead*, 233 F.R.D. 655,

663 (E.D. Cal. 2006). The word "predominant" is important because courts certify (b)(2) classes even where monetary relief is at issue, so long as the monetary relief is subordinate to the declaratory and/or injunctive relief. For instance, courts regularly grant (b)(2) certification to statutory-damages claims under the FDCPA. *See, e.g., Hunt v. Check Recovery Sys.*, No. 05-04993, 2007 U.S. Dist. LEXIS 58800, at *7-*8 (N.D. Cal. July 25, 2007) (collecting cases). The FDCPA authorizes an award of statutory damages in class actions equal to the lesser of $500,000 or one percent of the net worth of the debt collector. 15 U.S.C. § 1692k(a). Allocating statutory damages is a matter of performing a mechanical calculation and does not depend on the varying facts and circumstances of individual class members, as actual damages do. Courts therefore reason that certifying statutory-damages claims under (b)(2) is inconsistent neither with the purpose of that subsection, nor with due process. *See, e.g., Drinkman v. Encore Receivable Mgmt., Inc.*, No. 07-C-363-S, 2007 U.S. Dist. LEXIS 89514, at *13-*14 (W.D. Wis. Dec. 3, 2007); *Karnette*, 2007 U.S. Dist. LEXIS 20794 at *34 (certifying statutory-damages claims under (b)(2) because class members "st[oo]d to recover the exact same amount—an equal fraction of the statutory damage award" and stating that claims for actual damages could be severed); *Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 596-97 (E.D. Cal. 1999) (certifying issues of liability, declaratory relief, and statutory damages under (b)(2) and certifying issue of actual damages under (b)(3)).

Cheek & Zeehandelar argues that Plaintiffs are primarily seeking actual damages and that therefore (b)(2) certification is unavailable. The Court disagrees. Although Plaintiffs do request actual damages pursuant to both the FDCPA and Ohio's CSPA, they seek certification of these claims under Rule 23(b)(3), not (b)(2). Moreover, Plaintiffs are broadly challenging the

14

lawfulness of Cheek & Zeehandelar's business practice of filing form garnishment affidavits without properly inquiring into the status of the property purportedly subject to garnishment or attachment. Plaintiffs' primary goal, therefore, is to obtain a declaration that Cheek & Zeehandelar has engaged in deceptive and misleading business practices, and to force Cheek & Zeehandelar to comply with its legal duties. The Court finds that Plaintiffs' money damages claims do not predominate over their equitable-relief claims and that certification under Rule 23(b)(2) is proper.[2]

Following the lead of the many other courts who have considered the issue, the Court will also certify Plaintiffs' FDCPA statutory-damages claims under (b)(2). According to Cheek & Zeehandelar, its net worth as of August 24, 2006, was $283,900.17. The FDCPA permits successful plaintiffs to recover statutory damages equal to $500,000 or one percent of the debt collector's net worth. Assuming that the class consists of just the 1,236 people for whom Cheek & Zeehandelar has produced garnishment affidavits, and assuming also that Plaintiffs prevail in this litigation, each class member would be entitled to receive approximately $2.30 each. *Abels v. JBC Legal Group, P.C.*, 227 F.R.D. 541, 546-47 (N.D. Cal. 2005) (holding that FDCPA statutory damages did not predominate over the requested equitable relief because, given the defendant's net worth and the number of class members, each class member would be entitled to receive only $0.25 in statutory damages).

---

[2]In their complaint, Plaintiffs request declaratory and injunctive relief pursuant to Ohio's CSPA, not the FDCPA. Based on the statutory text of the FDCPA, it appears as though injunctive relief is not authorized, but "numerous FDCPA class actions seeking declaratory relief have been certified pursuant to Rule 23(b)(2)." *Karnette*, 2007 U.S. Dist. LEXIS 20794 at *32; *Tedrow v. Cowles*, No. 06-637, 2007 U.S. Dist. LEXIS 67391, at *24 (S.D. Ohio Sept. 12, 2007) (stating that "although injunctive relief is not authorized in FDCPA cases, corresponding declaratory relief is").

Finally, this Court would be remiss were it not to address two other recent cases decided in this District, at first blush similar to this one, in which class certification was denied. In both *Lee v. Javitch, Block & Rathbone, LLP*, 522 F. Supp. 2d 945 (S.D. Ohio 2007), and *Todd v. Weltman Weinberg & Reis Co., LPA*, No. 03-171, 2008 U.S. Dist. LEXIS 11350 (S.D. Ohio Feb. 14, 2008), the plaintiffs alleged that the defendant collection law firms violated the FDCPA by filing garnishment affidavits without a reasonable basis to believe that the debtor's property was not exempt under state or federal law. In each case, the district court denied class certification on the grounds that individual issues would predominate over class-wide issues. As the *Lee* court put it, "whether any [firm] attorney lacked a 'reasonable basis' to execute an affidavit to garnish any putative class member's bank account will depend upon the individual circumstances that pertain to that class member," such as what specific information the firm knew about each class member prior to filing the affidavit. 522 F. Supp. 2d at 958. Despite similar factual underpinnings, neither *Lee*, nor *Todd*, is applicable here because the plaintiffs in those cases sought certification exclusively under Rule 23(b)(3) (thus those courts' finding that common issues did not predominate, a requirement unique to (b)(3) actions, as discussed below). Plaintiffs here, of course, seek certification primarily under (b)(2) and secondarily under (b)(3).

It is to Plaintiffs' proposed (b)(3) sub-class that the Court now turns.

### C.  Certification of Plaintiffs' Proposed Class Under Rule 23(b)(3)

Rule 23(b)(3) imposes two requirements that are not part of (b)(2) classes. First, Plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Second, Plaintiffs must establish "that a class action is superior to other available methods for fairly and efficiently

16

adjudicating the controversy." *Id.* "To satisfy the predominance requirement . . . a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Beattie*, 511 F.3d at 564 (internal quotation marks and citation omitted).

Plaintiffs propose certifying a (b)(3) sub-class defined as

> all consumers whose exempt property or funds were attached or garnished, temporarily or permanently, based on an affidavit signed by any principal, partner, or employee of defendant Cheek & Zeehandelar at any time on or after August 24, 2004.

It's easy to see that this sub-class definition suffers from the same defect as Plaintiffs' proposed class definition: The inclusion of the word "exempt" makes it impossible to ascertain who is a member of the class without examining the unique circumstances of each putative class member to determine whether his or her attached or garnished property was exempt under either federal or state law. As already described, this would be a laborious process that would eliminate the benefits of litigating Plaintiffs' claims in a class action.

Further, modifying the sub-class definition, as the Court did with Plaintiffs' proposed class, will not save it. Even if the Court were to delete the term "exempt," so that the sub-class was defined as "all consumers whose property or funds were attached or garnished," the class would be ascertainable, but it would necessarily include people who had suffered no injury, and therefore are not entitled to any damages, the very thing that the (b)(3) suit is meant to provide.[3]

---

[3]The absence of injury as to some members of a (b)(2) class is not similarly problematic because the relief available there is declaratory and injunctive in nature. Class members who were not harmed would not accrue any benefits as a result of the issuance of a declaratory judgment or injunction, nor presumably would they care that they had been included in such a class.

In other words, some number of persons in the sub-class would have sustained no injury because their attached or garnished property was in fact *not exempt*. Sorting out which class members would be entitled to actual damages, and in what amounts, would require the Court to undertake a mini-hearing as to each class member to determine whether his or her property was exempt at the time it was attached or garnished. This in turn would cause the sub-class to fail the (b)(3) predominance test: individual issues—the exempt or non-exempt status of each class member's property and the amount of damages each sustained—would predominate over any common issues.

Plaintiffs minimize this concern by contending that a claims-processing mechanism will efficiently identify which class members' property was exempt and how much in damages they are owed. Plaintiffs say that "[f]or instance, by presenting a Social Security award letter and bank account statement, a class member can demonstrate that [he] or [she] had exempt funds in [his] or [her] account, while proving the amount of exempt funds wrongfully garnished and the associated bank charges." Plaintiffs overstate the ease and ability of such a claims process to eliminate the manageability problems associated with the individual issues present here. If the individual damages issues raised with respect to Plaintiffs' (b)(3) class could be resolved through a mathematical formula or through consulting identical written records applicable to each class member, a claims process might be appropriate. *In re Genetically Modified Rice Litig.*, No. 06-MD-1811, 2008 U.S. Dist. LEXIS 62989, at * 63 (E.D. Mo. Aug. 14, 2008) (stating that "[o]rdinarily, variation in individual damage amounts is not a bar to class certification," but that "class certification may not be suitable where the calculation of damages is not susceptible to a mathematical or formulaic calculation . . . .") (internal quotation marks and citation omitted);

18

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (holding that the predominance requirement was satisfied where determination of each class member's damages involved "a straightforward calculation of which days and how many hours they . . . worked" as well as a review of the defendant's written records keeping track of class members' earnings). Here, however, there are potentially endless variations attendant to the nature of each class member's property or funds that were attached, to the reasons why the property or funds were exempt, to the kinds of documents class members would submit to prove their exempt status, and to the calculations the Court would have to undertake to determine each class member's actual damages. Thus, because "after adjudication of the class wide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individualized claims, such claims are not suitable for class certification under Rule 23(b)(3)." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1266 (11th Cir. 2004).

For these reasons, the Court declines to certify Plaintiffs' (b)(3) damages claims. However, it is worth noting that if Plaintiffs prevail on their certified (b)(2) liability claims, class members will be able to take the resulting judgment against Cheek & Zeehandelar and use it as a basis for recovering their individual damages in their own lawsuits. *See e.g. Hiser v. Franklin*, 94 F.3d 1287, 1291 (9th Cir. 1996) (stating that "a class action suit seeking only declaratory and injunctive relief does not bar subsequent individual damages claims by class members, even if it is based on the same events"); *Karnette*, 2007 U.S. Dist. LEXIS 20794 at *31-*32 (stating that with a declaratory judgment in hand, members of a (b)(2) class would then seek actual damages in separate litigation).

## IV.  CONCLUSION

For the reasons described above, the Court **GRANTS** Plaintiffs' motion to certify the proposed Rule 23(b)(2) class, as modified, and **DENIES** Plaintiffs' motion to certify the proposed (b)(3) sub-class.

**IT IS SO ORDERED.**

       **s/Algenon L. Marbley**
**ALGENON L. MARBLEY**
**United States District Court Judge**

**DATE: September 5, 2008**